# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

**Case No.: 25-cv-26077**

BANG & OLUFSEN A/S and
B&O PLAY A/S,

                    Plaintiffs,

    v.

THE PARTNERSHIPS and
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A,"

                    Defendants.

_____/

## COMPLAINT

Plaintiffs Bang & Olufsen A/S and B&O Play A/S ("Plaintiffs" or "B&O") hereby bring the present action against the Partnerships and Unincorporated Associations Identified on Schedule A attached hereto (collectively, "Defendants") and allege as follows:

## I.      JURISDICTION AND VENUE

1.     This is an action seeking damages and injunctive relief for trademark counterfeiting and infringement and false designation of origin under the Lanham Act pursuant to 15 U.S.C. §§ 1114, 1116, 1121, 1125(a), and 1125(d); the All Writs Act, 28 U.S.C. § 1651(a); and 15 U.S.C. § 1051 *et seq.*

2.     This Court has original subject matter jurisdiction over B&O's claims pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 *et seq.*; 28 U.S.C. § 1338(a)–(b); and 28 U.S.C. § 1331.

3.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may

exercise personal jurisdiction over Defendants because Defendants structure their business activities to directly target consumers in the United States, including Florida, through at least the fully interactive e-commerce stores operating under the aliases identified on Schedule A attached hereto (the "Seller Aliases"). Specifically, Defendants have targeted sales to Florida residents by setting up and operating e-commerce stores that target United States consumers; offer shipping to the United States, including Florida; accept payment in U.S. dollars; and, on information and belief, have sold products using infringing and counterfeit versions of B&O's federally registered trademarks  (collectively, the "Unauthorized Products") to residents of Florida. Each of the Defendants is committing tortious acts in the United States and Florida, is engaging in interstate commerce, and has wrongfully caused B&O substantial injury in the United States, including in Florida.

## II.      INTRODUCTION

4.      B&O filed this case to prevent e-commerce store operators who trade upon B&O's reputation and goodwill by selling and/or offering for sale Unauthorized Products. Defendants create e-commerce stores under one or more Seller Aliases and then advertise, offer for sale, and/or sell Unauthorized Products to unknowing consumers. Defendants' activities, occurring at the same time and in the same retail space and manner as one another, blend together to create a single negative impression on consumers such that they constitute the same occurrence or series of occurrences. Defendants take advantage of a set of circumstances, including the anonymity and mass reach afforded by the Internet and the cover afforded by international borders, to violate B&O's intellectual property rights with impunity. Defendants also attempt to avoid liability by operating under one or more Seller Aliases to conceal their identities, locations, and the full scope and interworking of their operation. B&O is forced to file this action to combat Defendants'

counterfeiting of their registered trademarks, as well as to protect consumers from purchasing Unauthorized Products over the Internet. B&O has been, and continues to be, irreparably damaged through consumer confusion, dilution, and tarnishment of their valuable trademarks because of Defendants' actions and therefore seeks injunctive and monetary relief.

### III.    THE PARTIES

5.      B&O began in 1925 as a radio manufacturer founded by engineers Peter Bang and Svend Olufsen. They introduced their first consumer electronic product, the "Eliminator," which allowed radios to be powered by being plugged directly into the wall rather than by batteries. B&O quickly built a reputation for introducing cutting-edge, high-end audio systems, televisions, telephones, speakers, soundbars, headphones, and home entertainment solutions and accessories to the premium consumer electronics market. Now an industry leader in luxury audio and visual electronics, B&O's legacy of iconic franchises—such as the "Beo" prefix series including Beolit portable wireless speakers, Beogram turntables, Beovision TVs, and Beosound sound systems— reflects their unparalleled commitment, as stated in their mission, to "an alchemy of design, craft and sound" and "a never ceasing will to create the best."

6.      For more than a century, B&O has evolved from a pioneering radio manufacturer into a global leader in luxury audio-visual technology, expanding their reach to international markets and establishing a reputation for design-driven innovation. The company's continued investment in research and development has resulted in patented acoustic technologies and collaborations with renowned designers, ensuring their products remain at the forefront of performance and aesthetics.

7.      Today, B&O integrates advanced digital connectivity and smart features across their portfolio, reinforcing their position as a benchmark brand in premium consumer electronics.

8.      B&O markets and sells a variety of branded products, including, but not limited to, loudspeakers, portable speakers, soundbars, multiroom and architectural speakers, wireless headphones, televisions, remote controls, and related accessories such as covers, batteries, earbud tips, and replacement parts (collectively, "B&O Products").

9.      B&O Products have become enormously popular and even iconic, driven by B&O's quality standards and innovative designs. Among the purchasing public, B&O Products are instantly recognizable as such. The Bang & Olufsen brand has become a global success, and B&O Products are among the most recognizable in the world. B&O Products are distributed and sold to directly to consumers through B&O's official website[1] and B&O retail stores throughout the United States and globally[2], as well as on a wholesale basis to authorized retailers and e-commerce platforms.

10.      B&O has continuously used the trademarks BANG & OLUFSEN, B&O, BEO, and other trademarks, including a family of BEO-formative marks; and has continuously sold products under their trademarks (collectively, the "B&O Trademarks"). As a result of this continuous, long-standing use, as well as the fame and popularity of the Bang & Olufsen brand, strong common law trademark rights have amassed in the B&O Trademarks. B&O's use of the marks has also built substantial goodwill in the B&O Trademarks. The B&O Trademarks are famous marks and valuable assets of B&O. B&O Products typically include at least one of the B&O Trademarks.

11.      The B&O Trademarks are registered with the United States Patent and Trademark Office, a non-exclusive list of which is included below.

---

[1] https://www.bang-olufsen.com/en/us.
[2] https://stores.bang-olufsen.com.

| Registration Number | Trademark | Registration Date | Goods and Services |
|---|---|---|---|
| 992,401 | BEOLAB | Sep. 3, 1974 | For: Consumer electronics goods-namely, audio amplifiers in Class 009. |
| 993,731 | BEOMASTER | Sep. 24, 1974 | For: Consumer electronics goods-namely, fm and am tuners and amplifier combinations in Class 009. |
| 1,481,463 | BEOVISION | Mar. 22, 1988 | For: Televisions and television monitors in Class 009. |
| 2,340,801 | BEOSOUND | Apr. 11, 2000 | For: Electronic consumer goods, namely, audio recording and reproduction equipment comprising radio, loudspeakers and headphones therefor in Class 009. |
| 3,616,152 | BEOMASTER | May 5, 2009 | For: Loudspeakers, loudspeakers with built in amplifiers; electronic control units for regulation of sound signals; computer software for electric and electronic apparatus and appliances, namely, software to control and improve audio and video equipment sound quality in Class 009. |
| 1,006,022 | BANG & OLUFSEN | Mar. 4, 1975 | For: Consumer electronic goods-namely, FM and am tuners and amplifiers, radios, microphones and loudspeakers in Class 009. |
| 3,063,786 | BANG & OLUFSEN | Feb. 28, 2006 | For: Electric and electronic apparatus and appliances, namely, audio and video recording, reproduction and transmission equipment, namely, radios, radio receivers, players and recorders for CDs, and MP3 files, compact disc players, DVD players, loud speaker systems, power transformers for amplification loudspeakers, headphones, earphones and remote controls thereof; television sets; radio |

| | | | | receiving sets; radios for automobiles; amplifiers, loudspeakers, loudspeakers with built-in amplifiers; cabinets for loudspeakers; electronic control units for regulation of sound signals; record or disc recorders or players, telephones, telephones for transmission of data through the Internet and other networks; telecommunication equipment, namely, telecommunication cables, telecommunication exchangers, telecommunication switches, telecommunications and data networking hardware, namely, devices for transporting and aggregating voice, data, and video communications across multiple network infrastructures and communications protocols, telecommunications transmitters; electrical cable installations; electric and electronic apparatus and appliances for data processing and for input, output and storage of data, namely, central processing units for processing information, data, sound or images; computer programs recorded on tapes, cards, discs or other media for use in amplifiers and transformers for amplification, software for electric and electronic apparatus and appliances, namely, software to control and improve audio and video equipment sound quality, downloadable application services provider software for the uploading and downloading of digital files such as music files from a database to personal computer, |
|---|---|---|---|---|

MP3 players and mobile telephones, and software for use in linking audio and video equipment, and parts therefor in Class 009.

For: furniture for music instruments; sale and display counters, furniture for audio-visual apparatus, shop furniture; and parts therefor in Class 020.

For: Organizing exhibitions providing information pertaining to video, audio, computer and telecommunications equipment, systems and services related thereto; business management; business administration; retail store services and online retail store services in the field of audio-visual products, telephones, computers, medicinal apparatus in Class 035.

For: Repair and installation services in the field of consumer electric and electronic apparatus and appliances including electrical cable installations; household installations of video, audio, telecommunications and computer equipment and systems for use in the regulation and distribution of analogue or digital signals such as light, sound and picture signals in Class 037.

For: Education services, namely, conducting classes and seminars in the field of video, audio, computer and

|  |  |  | telecommunications equipment, systems and services related thereto; educational services through local or global computer networks, namely, providing online classes in the field of video, audio, computer and telecommunications equipment, systems and services related thereto; providing online training through local or global computer networks in the fields of video, audio, computer and telecommunications equipment, systems and services related thereto; entertainment services, namely, providing a web site featuring musical and video performances, musical videos, related film clips, photographs, and other multimedia materials, entertainment services, namely, providing of prerecorded music and information in the field of music, and commentary and articles about music, all on-line via global and local computer network in Class 041.

For: Interior design services for retail shops; information technology consultation concerning electric and electronic apparatus and appliances; design of household installations for regulation and distribution of light, sound and picture signals; licensing of intellectual property; industrial design, scientific research in Class 042. |
| --- | --- | --- | --- |

| | | | |
|---|---|---|---|
| 1,007,565 | B&O | Mar. 25, 1975 | For: Consumer electronic goods-namely, fm and am tuners and amplifiers, radios, microphones and loudspeakers in Classes 007, 009, 011, 012, 015. |
| 3,106,984 | B&O | Jun. 20, 2006 | For: Electric and electronic apparatus and appliances, namely, audio and video recording, reproduction and transmission equipment, namely, radios, radio receivers, players and recorders for CDs, mini-discs and MP3 files, compact disc players, DVD players, loud speaker systems, power transformers for amplification loudspeakers, headphones, earphones and remote controls thereof; television sets; radio receiving sets; amplifiers, loudspeakers, loudspeakers with built-in amplifiers; cabinets for loudspeakers; electronic control units for regulation of sound signals; tape, record or disc recorders or players, telephones, telephones for transmission of data through the Internet and other networks; telecommunication equipment, namely, telecommunication cables, telecommunication exchangers, telecommunication switches, telecommunications and data networking hardware, namely, devices for transporting and aggregating voice, data, and video communications across multiple network infrastructures and communications protocols, telecommunications transmitters; electrical cable |

9

| | | | | installations; electric and electronic apparatus and appliances for data processing and for input, output and storage of data, namely, central processing units for processing information, data, sound or images; computer programs recorded on tapes, cards, discs or other media for use in amplifiers and transformers for amplification; software for electric and electronic apparatus and appliances, namely, software to control and improve audio and video equipment sound quality, downloadable application services provider software for the uploading and downloading of digital files such as music files from a database to personal computer, MP3 players and mobile telephones, and software for use in linking audio and video equipment; and parts therefor in Class 009.<br><br>For: furniture for music instruments; sale and display counters, furniture for audio-visual apparatus, shop furniture; and parts therefor in Class 020.<br><br>For: Organizing exhibitions providing information pertaining to video, audio, computer and telecommunications equipment, systems and services related thereto; business management; business administration; retail store services and online retail store services in the field of audio-visual products, telephones, computers, |
|---|---|---|---|---|

|  |  |  | medicinal apparatus and furniture in Class 035.<br><br>For: Repair and installation services in the field of consumer electric and electronic apparatus and appliances including electrical cable installations; household installations of video, audio, telecommunications and computer equipment and systems for use in the regulation and distribution of analogue or digital signals such as light, sound and picture signals in Class 037.<br><br>For: Education services, namely, conducting classes and seminars in the field of video, audio, computer and telecommunications equipment, systems and services related thereto; educational services through local or global computer networks, namely, providing online classes in the field of video, audio, computer and telecommunications equipment, systems and services related thereto; providing online training through local or global computer networks in the fields of video, audio, computer and telecommunications equipment, systems and services related thereto; entertainment services, namely, providing a web site featuring musical and video performances, musical videos, related film clips, photographs, and other multimedia materials, entertainment services, namely, providing of prerecorded music |

| | | | |
|---|---|---|---|
| | | | and information in the field of music, and commentary and articles about music, all on-line via global and local computer network in Class 041.<br><br>For: Interior design services for retail shops; information technology consultation concerning electric and electronic apparatus and appliances; design of household installations for regulation and distribution of light, sound and picture signals; licensing of intellectual property; industrial design, scientific research in Class 042. |
| 3,505,315 | BEO | Sep. 23, 2008 | For: remote control units for electric and electronic apparatus and appliances for analogue, digital or optical reception, processing, reproduction, regulation or distribution of light, sound or picture signals; remote control units for television sets, radio receiving sets including radios for automobiles; remote control units for amplifiers, loudspeakers, loudspeakers with build in amplifiers; remote control units for home-entertainment systems; electronic control units for regulation of sound, lights and picture signals; remote control units for tape-, record- or disc-recorders or players and carriers of stored signals; software for operating remote control units; parts for all the aforementioned goods included in this class; spare parts for all the aforementioned goods included in this class in Class 009. |

| 4,489,925 | BEOPLAY | Mar. 4, 2014 | For: Electric and electronic apparatus and appliances, for analog, digital or optical receiving, processing, reproduction, control, amplification or distribution of light, sound or image signals, namely, radios, radio receivers, loud speaker systems, power transformers for amplification loudspeakers, headphones, earphones and remote controls for earphones, televisions sets, radio receivers, radios for automobiles, amplifiers, loudspeakers, loudspeakers with built-in amplifiers; Digital music players for music, namely, digital audio players and digital video players for music; Audio equipment containing amplifiers, namely, stereo tuners and loudspeakers containing amplifiers; Loudspeaker cabinets; Electronic control units for regulation of sound signals; Radio receivers; digital audio and video recorders and players, radios and audiovisual equipment for vehicles, namely, stereos, loud speakers, digital audio players, Headphones; Remote controls for televisions, radios, radio receivers, players and recorders for CDs, mini-discs and MP3 files, compact disc players, DVD players, and loudspeaker systems; Cables for electrical or optical signal transmission; control units for regulating sound; software for the remote control of lamps and other lighting devices, digital audio and video recorders and players; telecommunication |
|---|---|---|---|

| | | | | equipment, namely, telecommunication cables, telecommunication exchangers, telecommunication switches, telecommunications and data networking hardware, namely, devices for transporting and aggregating voice, data, and video communications across multiple network infrastructures and communications protocols, telecommunications transmitters; electric and electronic apparatus and appliances for data processing and for input, output and storage of data, namely, central processing units for processing information, data, sound or images; Computer software for use in database management, download and storage of audio and video files; software for electric and electronic apparatus and appliances, namely, software to control and improve audio and video equipment sound quality, downloadable application services provider software for the uploading and downloading of digital files such as music files from a database to personal computer, mobile telephones, and software for use in linking audio and video equipment, and parts therefor; Software for electric and electronic apparatus and appliances, namely, software to control and improve audio and video equipment sound quality, downloadable application services provider software for the uploading and downloading of digital files such as music files from a database to a |
|---|---|---|---|---|

| | | | |
|---|---|---|---|
| | | | personal computer, and mobile telephones and software for use in linking and operating audio and video equipment and home theater systems in Class 009. |
| 5,393,997 | BEOCONNECT | Feb. 6, 2018 | For: A downloadable software program that allows for transfer of music, photos, and data between a third party software provider and audio/visual hardware in Class 009. |
| 5,663,303 | BEOCREATE | Jan. 29, 2019 | For: Information technology and audio-visual and multimedia devices, namely, audio amplifiers, audiovisual receivers, software in the nature of application software for use in connection with the recording, transmission, reproduction, reception, control, remote control, operating and amplification of sound in electronic devices, namely, in loudspeakers and loudspeaker units and systems, tuners, amplifiers, electric and electronic apparatus and appliances for analogue, digital, wireless or optical reception, processing, reproduction, regulation or distribution of sound, namely, audiovisual receivers, digital media receivers, apparatus for the recording, transmission, processing and reproduction of sound audio equipment containing amplifiers, namely, audio speakers and loudspeakers with built-in amplifiers; amplifiers; electronic control units for regulation of sound signals; remote control units consisting of remote controls for radios; control units and related |

| | | | |
|---|---|---|---|
| | | | installations, namely, remote controls for radios, and stereos; software for remote control of light, electric and electronic apparatus and appliances for data processing and for input, output and storage of data, namely, data processors, and computer hardware for high-speed processing and storage of data using multiple CPUs; computer programmes recorded on cards or other media for use in database management, and in connection with sound optimizing; software for electric and electronic apparatus and appliances for use and control of audio equipment in Class 009. |
| 5,864,815 | BEOSOUND EDGE | Sep. 24, 2019 | For: Electrical and electronic apparatus and appliances for analogue, digital, optical and/or wireless reception, processing, reproduction, regulation or distribution of sound, namely, audio receivers, telecommunications transmitters, speakers, amplifiers and sound systems comprising the aforementioned; audiovisual equipment attached hereto, namely, speakers, amplifiers and stereo receivers; television sets; radio receivers; amplifiers; loudspeakers; audio recorders and digital audio players; remote control units for televisions and sound systems; cable installations, namely cable connectors; electric and electronic apparatus and appliances for data processing and for input, output and storage of data, namely, data processing apparatus and hard |

| | | | |
|---|---|---|---|
| | | | disk drives for storage of computer data; blank magnetic and optical data carriers; data processing equipment; software for controlling, configuring, designing and customizing sound and acoustic systems; application software for controlling, configuring, designing and customizing sound and acoustic systems; cabinets for loudspeakers; dampeners for electronic audio equipment; stands adapted for loudspeakers; wall mountings adapted for loudspeakers; structural parts and fittings to all the aforementioned goods included in this in Class 009. |
| 6,655,642 | BEOSONIC | Mar. 1, 2022 | For: Audio equipment, namely, television sets, radio receiving sets, radios for automobiles, amplifiers, loudspeakers, loudspeakers with build-in amplifiers, disc players, electronic carriers of stored signals and remote control units for regulation of sound signals for noise reduction, and for tone and sound control in relation to sound playback, and for tone and sound control in relation to music playback in cars; audio equipment, namely, television sets, radio receiving sets, radios for automobiles, amplifiers, loudspeakers, loudspeakers with build-in amplifiers, disc players, electronic carriers of stored signals and remote control units for regulation of sound signals for recording, transmission or reproduction of sound or images; electric and electronic interface equipment, namely, electric and electronic |

| | | | appliances for data processing and for input, output and storage of data onto computers, magnetic and optical data carriers; computer programmes recorded on tapes, cards, discs or other media for receiving, transmitting, processing, reproducing, controlling, amplifying or distributing light, sound, image, analog, digital or optical signals;  downloadable software for electric and electronic appliances for receiving, transmitting, processing, reproducing, controlling, amplifying or distributing light, sound, image, analog, digital or optical signals; loudspeakers and subwoofers; digital music players; TV apparatus, TV apparatus with built-in DVD players, amplifiers, radio receivers and/or Internet connections; audio equipment containing amplifiers, loudspeakers with built-in amplifiers; surround sound systems; loudspeaker cabinets; electronic control units for regulation of sound signals; radio receivers; CD players and recorders, players and recorders for digital media, radios and audiovisual equipment for vehicles; headphones; remote control apparatus; electrical controlling devices for audio equipment; computer hardware and downloadable computer software for use in connection with the recording, transmission, reproduction, reception, control, remote control, operating and |
|---|---|---|---|

| | | | |
|---|---|---|---|
| | | | amplification of light, sound or images, including in loudspeakers and loudspeaker units/systems, tuners, amplifiers, DVD and compact disc players, microphones and sound mixers; downloadable computer software for tone and sound control in relation to sound playback and downloadable computer software for noise reduction in relation to sound playback; telephone apparatus, answering machines, telephone apparatus with built-in cameras and monitors, smartphones, telephone apparatus for data transmission via the Internet or other computer networks; computers and computer tablets; disc storage units; downloadable computer software for controlling electric and electronic apparatus and equipment; sensors and detectors used in touch screen displays for audio equipment; electronic systems comprising of computers, a sound source, sensors, and loudspeakers; electric and electronic apparatus for making sound adjustments, specifically for the interaction between loudspeakers and environments with regard to optimising sound quality; replacement parts for all the aforementioned goods in Class 009. |
| 6,816,930 | BEOREMOTE | Aug. 16, 2022 | For: remote controls for televisions, radios, stereos, loudspeakers, and amplifiers; programmable remote controls for televisions, radios, stereos, |

| | | | |
|---|---|---|---|
| | | | loudspeakers, and amplifiers in Class 009. |
| 7,089,071 | ROOMSENSE | Jun. 27, 2023 | For: Downloadable software to control and improve audio equipment sound quality in Class 009. |
| 7,109,908 | MOZART PLATFORM | Jul. 18, 2023 | For: Downloadable Software for use in loudspeakers, headphones, televisions, soundbars, remote controls, USB-dongles, earphones, phones; Downloadable application software for use in loudspeakers, headphones, televisions, soundbars, remote controls, USB-dongles, earphones, phones; Downloadble computer application software for streaming audio-visual media content via the internet; Downloadble computer software platforms for streaming audio-visual media content via the internet; computer hardware; none of the foregoing relating to the field of insurance and finance or to the production, analysis, transmission and management of documents in the field of insurance and finance in Class 009. |
| 7,301,330 | BEOCOM | Feb. 13, 2024 | For: Downloadable software for controlling audio quality and sound levels in loud speakers, headphones, televisions, soundbars, remote controls, phones, USB dongles; computer hardware; Downloadable communications software for the transmission of voice, data, images, audio, video, and multimedia content; information technology and audio-visual, multimedia and |

| | | | | photographic devices, namely, loudspeakers, headphones, televisions, soundbars, remote controls for loudspeakers, headphones, televisions, soundbars, phones, namely, mobile phones, air phones, smart phones, wireless phones, wall mounted phones, desk phones, USB dongles being wireless network adaptors; communications equipment, namely, loudspeakers, headphones, televisions, soundbars, remote controls for loudspeakers, headphones, televisions and soundbars; phones, namely, mobile phones, telephones for use on airplanes, smart phones, wireless cellular phones, wall mounted telephones, desk telephones, USB dongles being wireless network adaptors; computer networking and data communications equipment, namely, loudspeakers, headphones, televisions, soundbars, remote controls for loudspeakers, headphones, televisions and soundbars; phones, namely, mobile phones, telephones for use on airplanes, smart phones, wireless cellular phones, wall mounted telephones, desk telephones, USB dongles being wireless network adaptors; USB Dongles being wireless network adaptors; USB-C Dongles being wireless network adaptors; USB cables; modems; USB modems; communication modems; USB adapters being power adapters; computer cables; gaming dongles being wireless network |

| | | | |
|---|---|---|---|
| | | | adaptors; earphones; headphones; loudspeakers; microphones; amplifiers; integrated circuit chips for digital video compression and decompression; disk drives for computers; interfaces for computers; joysticks for use with computers, other than for video games; computer mouse; blank USB flash drives; computer programs downloadable and recorded for connecting remotely to computers or computer networks; add-on circuit boards for connecting computers to networking software; mobile phones; audio speakers; soundbars; speakerphones in Class 009. |
| 7,943,014 | EARSENSE | Sep. 16, 2025 | For: In-ear headphones; earbuds; headphones; wireless headphones; sound reproduction apparatus; cases for headphones; electric connectors; battery chargers; wireless chargers; Downloadable and recorded software to control and improve audio equipment sound quality in Class 009. |
| 8,045,417 | AMADEUS PLATFORM | Dec. 2, 2025 | For: Downloadable software for operating and controlling earphones, headphones, and loudspeakers, for use in relation to earphones, headphones, loudspeakers; downloadable and recorded application software for operating and controlling earphones, headphones, and loudspeakers, for use in relation to earphones, headphones, loudspeakers; downloadable computer application software for |

| | | | streaming audio-visual media content via the internet for use in relation to earphones, headphones, loudspeakers; downloadable and recorded computer software platforms for operating and controlling earphones, headphones, and loudspeakers, for use in relation to earphones, headphones, loudspeakers in Class 009. |
|---|---|---|---|

12.     The U.S. registrations for the B&O Trademarks are valid, subsisting, and in full force and effect, and some are incontestable pursuant to 15 U.S.C. § 1065. The registrations for the B&O Trademarks constitute *prima facie* evidence of their validity and of B&O's exclusive right to use the B&O Trademarks pursuant to 15 U.S.C. § 1057(b). True and correct copies of the federal trademark registration certificates for the B&O Trademarks are attached hereto as **Exhibit 1**.

13.     The B&O Trademarks are exclusive to B&O and are displayed extensively on B&O Products and in marketing and promotional materials. The B&O Trademarks are also distinctive when applied to B&O Products, signifying to the purchaser that the products come from B&O and are manufactured to B&O's quality standards. Whether B&O manufactures the products themselves or contracts with others to do so, B&O has ensured that their products bearing the B&O Trademarks are manufactured to the highest quality standards.

14.     Many of the B&O Trademarks—including BANG & OLUFSEN, B&O, and BEO—are famous marks, as that term is used in 15 U.S.C. § 1125(c)(1) and have been continuously used and never abandoned. The innovative marketing and product designs of B&O Products have enabled the Bang & Olufsen brand to achieve widespread recognition and fame and have made the B&O Trademarks some of the most well-known marks in the consumer electronics

industry. The widespread fame, outstanding reputation, and significant goodwill associated with the Bang & Olufsen brand have made the B&O Trademarks valuable assets of B&O.

15.    The B&O Trademarks have been the subject of substantial and continuous marketing and promotion by B&O. B&O has marketed and promoted, and continues to market and promote, the B&O Trademarks in the industry and to consumers through authorized retailers, B&O's official website[3], and B&O retail stores throughout the United States and globally[4].

16.    B&O has expended substantial time, money, and other resources on advertising and promoting products bearing the B&O Trademarks. B&O Products have also been the subject of extensive unsolicited publicity resulting from their high-quality, innovative designs. As a result, products bearing the B&O Trademarks are widely recognized and exclusively associated by consumers as being high-quality products sourced from B&O. B&O Products have become among the most popular of their kind in the world.  The B&O Trademarks have achieved tremendous fame and recognition, adding to the inherent distinctiveness of the marks. As such, the goodwill associated with the B&O Trademarks is of immeasurable value to B&O.

17.    B&O Products are sold only through authorized retail channels and are recognized by the public as being exclusively associated with the Bang & Olufsen brand.

18.    Defendants are unknown individuals and business entities who own and/or operate one or more of the e-commerce stores under the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to B&O. On information and belief, Defendants reside and/or operate in foreign jurisdictions and redistribute products from the same or similar sources in those

---

[3] https://www.bang-olufsen.com/en/us.
[4] https://stores.bang-olufsen.com.

locations. Defendants have the capacity to be sued pursuant to Federal Rules of Civil Procedure 17(b).

19.     On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for B&O to learn Defendants' true identities and the exact interworking of their network. If Defendants provide additional credible information regarding their identities, B&O will take appropriate steps to amend the Complaint.

### IV.     DEFENDANTS' UNLAWFUL CONDUCT

20.     The success of the Bang & Olufsen brand has resulted in significant counterfeiting of the B&O Trademarks. Because of this, B&O has implemented a brand protection program by investigating suspicious websites and online marketplace listings identified in proactive Internet sweeps. B&O also engaged the Danish Technological Institute ("DTI") to conduct independent scientific testing on products bearing counterfeit B&O Trademarks. *See* [DTI] Test Report (December 11, 2025), attached hereto as **Exhibit 2**. The analysis revealed that the device under test ("DUT") exhibited external characteristics that appeared substantially identical to those of B&O Products. *Id.* at 2. The Test Report confirmed that the DUT did not incorporate the proprietary technology present in B&O Products. *Id.* at 3. The DUT also lacked the integrated charging safeguards and thermal protection mechanisms engineered into the batteries and circuitry of B&O Products. *Id.* The DUT exhibited abnormal thermal behavior, with over-temperature readings approximately three times the normal value—representing a 200% increase beyond the acceptable threshold for a passing result. *Id.* This is just one non-limiting example of how the distribution of Unauthorized Products not only causes irreparable harm to the reputation and

goodwill associated with the B&O Trademarks but also poses a significant safety risk to consumers and the public.

21.     Recently, B&O has identified many fully interactive e-commerce stores offering Unauthorized Products on online marketplace platforms like Alibaba Group Holding Ltd. ("Alibaba"), AliExpress.com ("AliExpress"), Dhgate.com ("DHGate"), eBay, Inc. ("eBay"), and Walmart, Inc. ("Walmart"), including the e-commerce stores operating under the Seller Aliases. The Seller Aliases target consumers in this judicial district and throughout the United States. According to a report prepared for The Buy Safe America Coalition, most counterfeit products now come through international mail and express courier services (rather than shipping constrainers) because of increased sales from foreign online counterfeiters. *The Counterfeit Silk Road: Impact of Counterfeit Consumer Products Smuggled Into the United States*, prepared by John Dunham & Associates (**Exhibit 3**).

22.     Because the counterfeit products sold by offshore online counterfeiters do not enter normal retail distribution channels, the United States economy lost an estimated 300,000 or more full-time jobs in the wholesale and retail sectors alone in 2020. *Id.* When accounting for lost jobs from suppliers that would serve these retail and wholesale establishments, and the lost jobs that would have been induced by employees re-spending their wages in the economy, the total economic impact resulting from the sale of counterfeit products was estimated to cost the United States economy over 650,000 full-time jobs that would have paid over $33.6 billion in wages and benefits. *Id.* Additionally, it is estimated that the importation of counterfeit goods cost the United States government nearly $7.2 billion in personal and business tax revenues in the same period. *Id.*

23.     Furthermore, online marketplace platforms like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." **Exhibit 4**, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); *see also* **Exhibit 5** ("Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020)). The report found that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and that "[t]he ability to rapidly proliferate third-party online marketplaces greatly complicates enforcement efforts, especially for intellectual property rights holders." *Id.* at 11, 22. Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by establishing multiple virtual storefronts. *Id.* at 22. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated. *Id.* at 39. Further, "[e]-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and "counterfeiters." **Exhibit 4** at 186–87. Specifically, brand owners are forced to "suffer through a long and convoluted notice and takedown procedure only for the counterfeiter to reappear under a new false name and address in short order." *Id.* at 161.

24.     Defendants have targeted sales to Florida residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases; offer shipping to the United States, including Florida; accept payment in U.S. dollars; and, on information and belief, sell Unauthorized Products to residents of Florida.

25.     Defendants concurrently employ and benefit from similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars via numerous methods, including credit cards, Amazon Pay, PayPal, and/or Stripe. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. B&O has not licensed or authorized Defendants to use any of the B&O Trademarks, and none of the Defendants are authorized retailers of B&O Products.

26.     Many Defendants also deceive unknowing consumers by using the B&O Trademarks without authorization within the content, text, and/or meta tags of their e-commerce stores to attract consumers using search engines to find websites relevant to B&O Products. Other e-commerce stores operating under the Seller Aliases omit using the B&O Trademarks in the item title to evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for B&O Products.

27.     E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

28.     E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Unauthorized Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like

Defendants to conceal their identities and the full scope and interworking of their operation, and to avoid being shut down.

29.     Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share identifiers, such as templates with common design elements that intentionally omit any contact information or other information for identifying Defendants or other Seller Aliases they operate or use. E-commerce stores operating under the Seller Aliases include other notable common features such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, Unauthorized Products for sale by the Seller Aliases bear similar irregularities and indicia of being unauthorized to one another, suggesting that the Unauthorized Products were manufactured by and come from a common source and that Defendants are interrelated.

30.     E-commerce store operators like Defendants communicate with each other through QQ.com chat rooms and utilize websites, like sellerdefense.cn, that provide tactics for operating multiple online marketplace accounts and evading detection by brand owners. Websites like sellerdefense.cn also tip off e-commerce store operators like Defendants of new intellectual property infringement lawsuits filed by brand owners, such as B&O, and recommend that e-commerce operators cease their counterfeiting activity, liquidate their associated financial accounts, and change the payment processors that they currently use to accept payments in their online stores.

31.     Counterfeiters, such as Defendants, typically operate under multiple seller aliases and payment accounts so that they can continue operation despite B&O's enforcement. E-

commerce store operators like Defendants maintain offshore bank accounts and regularly move funds from their financial accounts to offshore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to B&O.

32.     Defendants are working to knowingly and willfully manufacture, import, distribute, offer for sale, and/or sell Unauthorized Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from B&O, have knowingly and willfully used, and continue to use, the B&O Trademarks in connection with the advertisement, distribution, offering for sale, and/or sale of Unauthorized Products into the United States and Florida over the Internet.

33.     Defendants' unauthorized use of the B&O Trademarks in connection with the advertising, distribution, offering for sale, and/or sale of Unauthorized Products into the United States, including Florida, is likely to cause, and has caused, confusion, mistake, and deception by and among consumers and is irreparably harming B&O.

### COUNT I
### TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

34.     This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the B&O Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The B&O Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from B&O Products offered, sold, or marketed under the B&O Trademarks.

35.     Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and/or advertising products using counterfeit reproductions of the B&O Trademarks without B&O's permission.

36.     B&O owns the B&O Trademarks. B&O's United States registrations for the B&O Trademarks are in full force and effect. Upon information and belief, Defendants have knowledge of B&O's rights in the B&O Trademarks and are willfully infringing and intentionally using infringing and counterfeit versions of the B&O Trademarks. Defendants' willful, intentional, and unauthorized use of the B&O Trademarks is likely to cause, and is causing, confusion, mistake, and deception as to the origin and quality of the Unauthorized Products among the general public.

37.     Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

38.     B&O has no adequate remedy at law, and if Defendants' actions are not enjoined, B&O will continue to suffer irreparable harm to their reputation and the goodwill of the B&O Trademarks.

39.     The injuries and damages sustained by B&O have been directly and proximately caused by Defendants' wrongful reproduction, use of advertisement, promotion, offering to sell, and/or sale of Unauthorized Products.

**COUNT II**
**FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))**

40.     Defendants' promotion, marketing, offering for sale, and/or sale of Unauthorized Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with B&O or the origin, sponsorship, or approval of the Unauthorized Products by B&O.

41.     By using the B&O Trademarks in connection with the offering for sale and/or sale of Unauthorized Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Unauthorized Products.

42.     Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Unauthorized Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

43.     B&O has no remedy at law and will continue to suffer irreparable harm to their reputation and the associated goodwill of the Bang & Olufsen brand if Defendants' actions are not enjoined.

## PRAYER FOR RELIEF

WHEREFORE, B&O prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from— pursuant to the Lanham Act, 15 U.S.C. § 1116; the All Writs Act, 28 U.S.C. § 1651(a); and Federal Rule of Civil Procedure 65:

    a.  using the B&O Trademarks or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a B&O Product or is not authorized by B&O to be sold in connection with the B&O Trademarks;

    b.  passing off, inducing, or enabling others to sell or pass off any products as B&O Products or any other product produced by B&O, that is not B&O's or not produced under the authorization, control, or supervision of B&O and approved by B&O for sale under the B&O Trademarks;

    c.  committing any acts calculated to cause consumers to believe that Defendants' Unauthorized Products are those sold under the authorization, control, or

supervision of B&O, or are sponsored by, approved by, or otherwise connected with B&O;

   d.   further infringing the B&O Trademarks and damaging B&O's goodwill; and

   e.   manufacturing, shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for B&O, nor authorized by B&O to be sold or offered for sale, and which bear any of the B&O Trademarks, or any reproductions, counterfeit copies or colorable imitations thereof;

2) Entry of an Order pursuant to the All Writs Act, 28 U.S.C. § 1651(a), and the Court's inherent authority that, upon B&O's request, those with notice of the injunction, including without limitation, any websites and/or online marketplace platforms like Alibaba, AliExpress, DHGate, eBay, and Walmart shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit goods using the B&O Trademarks;

3) That Defendants account for and pay to B&O all profits realized by those Defendants by reason of those Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the B&O Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4) In the alternative, that B&O be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the B&O Trademarks;

5) B&O is further entitled to recover their attorneys' fees and full costs for bringing this action pursuant to 15 U.S.C. § 1117(a); and

6) Award any and all other relief that this Court deems just and proper.

Dated this 23ʳᵈ day of December 2025.      Respectfully submitted,

/s/ George C. Sciarrino
George C. Sciarrino
Florida Bar No. 1033844
TME Law, P.C.
10 S. Riverside Plaza
Suite 875
Chicago, Illinois 60606
708.475.1127
george@tme-law.com

*Counsel for Plaintiffs Bang & Olufsen A/S and B&O Play A/S*

## **<u>Schedule A</u>**

This page is the subject of B&O's contemporaneously prepared Motion to File Under Seal, which B&O intends to promptly file upon the assignment of this civil case. Accordingly, this page has been redacted pursuant to L.R. 5.4(b)(1).